UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCARLETT PAVLOVICH,

        Plaintiff,

v.                                                                                    Case No. 25-CV-00078

NEIL GAIMAN and
AMANDA PALMER,

        Defendants.

**DECLARATION OF NEIL GAIMAN IN SUPPORT OF MOTION TO DISMISS**

    I NEIL GAIMAN, hereby declare:

    1.    I work professionally as an author of short fiction, novels, comic books, audio theatre, and screenplays.

    2.    I was born in England, and I am a citizen of the United Kingdom.

    3.    I am a lawful permanent resident of the United States.

    4.    I am a permanent resident of New Zealand. After my wife, Amanda Palmer, and I separated in April 2020, I lived in various places in New Zealand, including on Waiheke Island from December 2020 through February 2022, and again from December 2022 to February 2023.

    5.    In or around February 2022, while living in New Zealand, my wife, hired Scarlett Pavlovich a.k.a. Scarlett Wynter a.k.a. Molly Pavlovich ("Pavlovich") to assist as a part-time babysitter for our son.

6. On February 4, 2022, I shared a meal with Pavlovich in the garden outside of our home on Waiheke Island.

7. The garden had a bathtub with a hot water hose attached. After we ate, I invited Pavlovich to take a bath with me. I did not pressure her to do so, and she could have declined my invitation. She agreed and we took off our clothes and got into the bath. While in the bath, Pavlovich and I talked about consent. She told me that she preferred older partners and was open to having a sexual relationship with me. We cuddled and made out in the bath. We then returned to the house and engaged in other sexual activity—although we did not have sex then, or at any time thereafter. At no point did Pavlovich say or do anything that led me to believe that she was not a willing participant in the activities.

8. None of Pavlovich's claims are true. She is a fantasist who has fabricated a tale of abuse against me and Ms. Palmer. Although false, the alleged conduct claimed and described in the Complaint, all supposedly occurred in New Zealand.

9. I communicated with Pavlovich using the WhatsApp messaging service. True and correct copies of my WhatsApp correspondence with Pavlovich are attached as **Exhibits A** and **B**. The messages in Exhibits A and B were mainly exchanged in early 2022, but the messages continue throughout the year and into early 2023—months after Pavlovich accused me of assault and filed a police report in New Zealand. The messages, which are true and accurate copies kept by me, demonstrate, in Pavlovich's own words, that our relationship was consensual, and that Pavlovich was an enthusiastic participant who initiated many of our sexual encounters. They

also clearly show that outside influencers who may be called as witnesses pushed a false narrative of sexual assault against Pavlovich's wishes.

10. I have read the Complaint in this case. I anticipate that the following individuals could be called witnesses if this case were to proceed to trial, all of whom, upon information and belief, reside in New Zealand or elsewhere outside of the United States:

    a. M.A., friend of Pavlovich, who allegedly perpetuated Pavlovich's false claims;

    b. R.C., my assistant during the relevant time period, who has information about Pavlovich's false allegations;

    c. H.H., neighbor on Waiheke, who can dispute Pavlovich's false claims;

    d. E.A., neighbor on Waiheke, who can dispute Pavlovich's false claims;

    e. S.E.B., realtor, who can testify regarding the property referenced in Pavlovich's Complaint;

    f. X.O., personal assistant who can dispute Pavlovich's false claims;

    g. E.B., personal assistant who can dispute Pavlovich's false claims;

    h. V.S., son's nanny during the relevant time period, who can dispute Pavlovich's false claims;

    i. L.B., housekeeper, who can dispute Pavlovich's false claims;

   j.  D.C., friend of Pavlovich, whose mother was Pavlovich's landlord; she can dispute Pavlovich's false claims.

   k.  K, M.A.'s partner, who allegedly spoke with Pavlovich and M.A. about me;

   l.  P.B.G., M.A.'s friend and purported expert, who allegedly spoke with Pavlovich and M.A. about me

   m.  E.S., M.A.'s friend who allegedly spoke with Pavlovich and M.A. about me.

  11. Some of the messages in Exhibit A refer to specific individuals (e.g., M.A.) while other messages make general references to people ("I'm livid with *everyone*"), who may be witnesses in a trial in this case. Pavlovich sent these messages to me from New Zealand.

  12. When Pavlovich agreed to babysit for us, I had her sign an Independent Contractor Agreement ("Agreement"). A true and correct copy of the Agreement signed by Pavlovich is attached as **Exhibit C**. At the time that Pavlovich signed the agreement, we were both residing in New Zealand.

  13. In or around November 2022, Pavlovich reported her allegations to law enforcement authorities in New Zealand. Those allegations were thoroughly investigated by New Zealand police, and no charges were brought. In early April 2024, the New Zealand police closed the investigation.

  14. Plaintiff engaged in a media campaign to publicize her alleged claims before filing the complaint. She is quoted at length in a *New York* magazine story,

largely centered on her account[1], was interviewed in a Tortoise podcast series,[2] and spoke to other media outlets as well[3], repeatedly defaming me publicly. The Complaint here and in two other districts are designed to pressure me into an unjust financial settlement.

       I declare, under penalty of perjury, that the foregoing is true and correct. Executed on March 4, 2025.

*[signature]*
NEIL GAIMAN

---

[1] https://nymag.com/press/article/on-the-cover-the-side-of-neil-gaiman-his-fans-never-saw.html

[2] https://www.tortoisemedia.com/listen/master-the-allegations-against-neil-gaiman

[3] https://unherd.com/2024/09/bad-omens-for-neil-gaiman/