# EXHIBIT C

# INDEPENDENT CONTRACTING AGREEMENT

**between**

**Neil Gaiman**

**and**

**Molly Pavlovich AKA Scarlett Wynter**

**THIS AGREEMENT** is dated the                 day of                                    2022

**BETWEEN**    **Neil Gaiman** (together with its successors and assigns called the **Company**)

**AND**    Molly Pavlovich AKA Scarlett Wynter (**Contractor**)

**THE PARTIES AGREE:**

1. **COMMENCEMENT DATE AND TERM**

    1.1    **Commencement:**  This agreement shall commence on the date specified in Schedule A of this agreement and shall continue until the date specified in Schedule A or otherwise terminated in accordance with this clause.  The parties may agree to extend the term of the agreement as set out in Schedule A.

    1.2    **Summary Termination:**  The Company reserves the right to summarily terminate the agreement at any time after its commencement for any serious or material breach by the Contractor.

    1.3    **Termination:**  Notwithstanding the above, either the Company or the Contractor may terminate this agreement without any reason whatsoever by giving 2 weeks' written notice (or payment in lieu) to the other.

    1.4    **Consequences of Termination:** On termination of this agreement, clauses 7, 9, 10 and 11 and any other clauses that are intended by the parties to continue after termination will continue to apply. Termination of this agreement will be without prejudice to any rights or obligations of the parties, which have accrued as at the date of termination.

2. **SERVICES TO BE PROVIDED**

    2.1    The Contractor agrees to perform the services, as set out in Schedule B for the Company on the following basis:

    2.1.1    **Good Work Standards:**  The Contractor agrees to provide their services in a manner that is consistent with good work standards, or in accordance with appropriate professional standards or codes of practice;

    2.1.2    **Equipment:**  The Contractor shall provide equipment sufficient to perform the services to be rendered pursuant to this agreement, including a laptop and the equipment shall be replaced and maintained entirely at the cost of the Contractor.

    2.1.3    **Negligence and Recklessness:**  The Contractor agrees to treat the Company's equipment with all reasonable care and will reimburse the Company for any damage inflicted on such equipment as a result of the negligence or recklessness of the Contractor.

    2.1.4    **Due Diligence and Care:**  The Contractor agrees to perform the services described in Schedule B of this agreement to the

best of her knowledge and experience and using due diligence and care.

3. **INDEPENDENT CONTRACTOR**

    3.1    **Not an Employee:**  The Contractor is in all respects an independent contractor and not an employee or partner or subsidiary of the Company and is not entitled to pledge the credit of the Company.  The Contractor shall be solely liable for all of her debts, losses, expenses and taxation on her income.

    3.2    **No Claim an Employee:**  The Contractor agrees that at no stage either during or subsequent to the termination of this agreement will the Contractor claim that she is or was an employee of the Company.

    3.3    **Acknowledgment of Advice:**  The Contractor acknowledges that she has had an opportunity to seek advice about this agreement and intends this arrangement to be that of independent contractor.

4. **ASSIGNMENTS**

The Contractor shall not assign her rights and obligations hereunder without the prior written consent of the Company nor shall the Contractor permit vicarious performance of her obligations under this agreement.

5. **PAYMENT**

    5.1    **Contract Fee:**  The Contractor's fee shall be calculated in accordance with schedule C of this agreement.

    5.2    **Contractor to Invoice:**  The Contractor shall present a monthly invoice to the Company. The invoice shall specify the amount of GST payable (if any).

    5.3    **Payment of Invoice:**  The Company will make payments in respect of the Contractor's invoices, no later than the 20th of the month following the month the invoice has been presented to the Company.

    5.4    **Reimbursement of expenses:**  The Contractor will be reimbursed for fuel and other expenses (e.g. purchase of office supplies) reasonably incurred in providing the services on the timely submission of GST invoices.

6. **LIABILITIES OF CONTRACTOR**

    6.1    **Taxation:**  The Contractor is solely responsible for payment of all taxes, GST, insurances, duties or levies which may be payable in respect of payments or benefits provided by the Company under this agreement and the Company will make no deductions on account of tax and any other imposition except which the Company is required by law to make.

    6.2    **Goods and Services Tax:**  The Contractor will ensure that she is registered for GST purposes and she will provide the Company with her GST number should the Company require it.

    **6.3**    **Payment of Fines:**  The Contractor is responsible for the payment of any fine for failure to comply with any statute or regulation.

    **6.4**    **Compliance with Statutes:**  The Contractor agrees to comply with all statutes, regulations and Government orders.

**7.**    **CONFIDENTIALITY**

    **7.1**    The Contractor agrees to maintain strict confidentiality with respect to the services and duties performed for the Company.  The Contractor will not disclose, and the Contractor will use her best endeavours to protect against the disclosure of confidential information, to any person, firm, corporation or entity any information acquired through the Company, including but not limited to, trade information, forms and documents, products, services, the identities of current, past and prospective customers, financial information, intellectual property, and any information concerning Neil Gaiman (including, without limitation, information relating to his business associates, business entities, partnerships and trusts with which they are affiliated, his (and his family's) characteristics, customs, views, opinions, ideas, conduct, habits, purchases, shopping preferences/habits, personal database/contacts, photographs and videotapes, travel itineraries, social/family interactions, tax information and phone calls) and any other information, both during the terms of this agreement and after its termination.

    **7.2**    It is agreed that the benefits conferred, or purported to be conferred to the Company in clause 7.1 will also be for the benefit of Neil Gaiman.

**8.**    **HEALTH AND SAFETY**

    **8.1**    The Contractor undertakes to comply with the provisions of the Health and Safety at Work Act 2015 and its associated regulations (and any legislation that may amend, revise or replace that Act or those regulations) insofar as those provisions relate to the performance by the Contractor of any obligations on the Contractor under this agreement.

**9.**    **PROPRIETARY RIGHTS**

    **9.1**    Any material and all intellectual property rights whatsoever in all materials including patents, registered designs, petty patents, utility models, plant variety rights, trade marks (including logos and trade dress), domain names, copyright, circuit layouts, rights in computer software and databases, rights in inventions, confidential information, know-how and trade secrets and all other intellectual property, in each case whether registered or unregistered (including applications for the grant of any of the foregoing) and all rights or forms of protection having equivalent or similar effect to any of the foregoing which may subsist anywhere in the world made, discovered or used by the Contractor (including by the Contractor's officers, employees and any permitted sub-contractors) pursuant to this agreement or relating to the Contractor's duties under this agreement, will forthwith be disclosed to the Company and will belong to and be at the absolute disposal of the Company, including after termination of this agreement.

    **9.1**    To the extent that the Contractor incorporates any intellectual property owned or licensed by the Contractor (**Contractor IP**) in any materials or

  documents created by the Contractor under this agreement (**Work Product**):

  **9.1.1** the Contractor hereby grants the Company a perpetual, worldwide, non-exclusive, royalty-free licence to use the Contractor IP in relation to the Work Product and any products or services arising out of or in connection with the Work Product; and

  **9.1.2** the Contractor warrants that use of the Contractor IP does not infringe any third party intellectual property rights, and the Contractor indemnifies the Company against any loss suffered as a result of the Company's use of the Contractor IP under this agreement.

**9.2** The Contractor will disclose to the Company, and make a record that is accessible to the Company of, any intellectual property that the Contractor discovers, creates or becomes aware of under this agreement or in connection with the Contractor's duties under this agreement.

**9.3** The Contractor will procure the waiver of any and all moral rights in relation to any material and intellectual property produced under this agreement.

**9.4** The Contractor will do all things and execute all documents reasonably required by the Company to perfect the Company's ownership of, and the waiver of rights in or to, any intellectual property under this agreement, including anything reasonably required to register the intellectual property in any intellectual property registry or anything to assist the Company's successor's to do so, even after termination of this agreement.

## 10. RETURN OF COMPANY PROPERTY

On termination of the agreement the Contractor shall return all Company documents, materials relating to the Company's business or its clients and customers and including copies of such materials, whether hardcopy or stored electronically and other materials supplied to the Contractor or otherwise acquired by the Contractor during the term of the agreement.

## 11. INDEMNITY

The Contractor indemnifies the Company against any liability for any direct, indirect or consequential injury, loss or damage arising out of any act, default or omission of, or any representation made by, the Contractor (including any employee or agent of the Contractor.)

## 12. CONFLICT OF INTEREST

**12.1** The Contractor will as a result of this agreement be privy to confidential information of the Company and its related companies which is strategic, valuable and competitively sensitive. The Contractor will not during the term of this agreement, without the prior written consent of the Company, either directly or indirectly carry out work which conflicts or may conflict with the Company's interests or which interferes with the ability of the Contractor to perform her obligations.

    **12.2**    Without limiting clause 12.1, where the Contractor believes any work (potential or current) may conflict with the Company's interests, she will promptly notify the Company of the work, provide the Company with such information as the Company may reasonably require to determine the extent and materiality of the conflict, and consult with the Company about practical ways to avoid the conflict or reduce it to a level where the Company may be prepared to consent to the Contractor carrying out the work.

**13.   FORCE MAJEURE**

Neither party to this agreement will be liable for any delay in performing or failure to perform their obligations under this agreement if such delay or failure is the result of act of God, fire, explosion, industrial dispute, pandemic, act of government (such as a change in legislation, regulation or order maybe under legislative authority) or anything beyond the reasonable control of the party.

**14.   DISPUTE RESOLUTION**

    **14.1**    **Mediation**

    If any dispute or difference arises between the parties in connection with or arising out of this agreement or its performance, any party may give written notice specifying the nature of the dispute and its intention to refer such dispute or difference to mediation. If a request to mediate is made then the party making the request will invite the chairperson for the time being of the New Zealand Chapter of Lawyers Engaged in Alternative Dispute Resolution ("LEADR") to appoint a mediator to enable the parties to mediate and settle the dispute. All discussions in the mediation will be without prejudice and will not be referred to in any later proceedings. The parties will bear their own costs in the mediation and will equally share the mediator's costs.

    **14.2**    **Arbitration**

    In the event the parties are unable (or unwilling) to resolve by mediation any dispute or difference between the parties arising out of the interpretation or application or operation of this agreement then the matter shall be submitted to arbitration and shall be decided by one arbitrator if the parties can agree on the appointment of one person. If they cannot so agree then the arbitration shall be by two disinterested persons, one each to be appointed by the Company and the Contractor or by an umpire to be chosen by such arbitrators before entering into the consideration of such difference or dispute. Every such arbitration shall be conducted in accordance with and shall be subject to the provisions of the Arbitration Act 1996 or any enactment passed in amendment or substitution therefor.

**15.   SEVERABILITY**

Should any part or portion of this agreement be held invalid, the remainder of the agreement shall continue in force and effect as if the invalid provision had been deleted provided however that the parties to this agreement may negotiate a valid and enforceable provision in replacement of the invalid provision.

### 16. GOVERNING LAW AND JURISDICTION

This agreement is governed by New Zealand law.  The parties submit to the exclusive jurisdiction of the New Zealand courts in respect of all matters relating to this agreement.

### 17. COMPLETENESS

This agreement represents a full record of the agreement entered into between Contractor and the Company and replaces all previous written or oral agreements and understandings. Any changes or additions to this agreement will need to be in writing and signed by both parties.

Signed as an agreement.

**SIGNED** for and on behalf of **NEIL GAIMAN** by:

| Full name of authorised signatory | Signature of authorised signatory |

**SIGNED** by:

| **Molly Pavlovich AKA Scarlett Wynter** | Signature of authorised signatory |

# SCHEDULES

**A.    Term of Contract**

Commencement Date February 4th, 2022

Expiry Date TBD

The parties agree that the term of the agreement will be [*insert*] months from the Commencement Date. At the end of the [*insert*] month term, the parties may agree in writing to extend the agreement on a monthly basis.

OR

The parties agree that the term of the agreement will be for the duration of the Company's current projects as set out below:
- [*insert details of project[s] the contractor will be required to work on*]

**B.    The Services**

The Contractor shall perform all services reasonably connected with being a babysitter for A▮.

**C.    Contract Fee**

The fees payable to the Contractor shall be on the following basis:

25 NZD an hour. Contractor to submit invoice
Employer will also pay for weekly rent at the rate of 400 NZD for a period to be determined.