UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

SCARLETT PAVLOVICH,

Plaintiff,

v.                                                    Case No. 25-CV-00078-jdp

NEIL GAIMAN and
AMANDA PALMER,

Defendants.

## DEFENDANT NEIL GAIMAN'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### INTRODUCTION

Why are we here? That is the question Plaintiff can't answer.

Plaintiff filed a complaint in the Western District of Wisconsin levying salacious, outrageous, and false allegations against Neil Gaiman. Plaintiff alleges conduct occurring entirely within New Zealand, the same country that Plaintiff is a citizen of and where both Gaiman and his wife Amanda Palmer have permanent residency status. New Zealand is the forum where non-party witnesses live. New Zealand is the forum where Plaintiff's alleged injury occurred. Now, under the mistaken assertion that New Zealand does not provide a remedy for Plaintiff, she asks this Court to maintain the case in the Western District of Wisconsin—over 8,000 miles from where the conduct is alleged to have occurred and from where she is a citizen. This is forum shopping. Plaintiff is not barred from obtaining a remedy in New Zealand; it is just not the remedy Plaintiff wants.

The gravamen of Plaintiff's baseless claims is an allegation that she was raped by Gaiman. This accusation is somehow transmogrified into a human trafficking claim, where Plaintiff alleges that she was not paid for her work as a nanny and that Gaiman's wife, Palmer, intentionally recruited Plaintiff to be assaulted by Gaiman. Although clothed as a TVPA claim, this is a sexual assault claim. No one was "trafficked" anywhere, let alone anywhere near Wisconsin.  In his motion to dismiss, Gaiman included several text messages he received from Plaintiff to demonstrate that key witnesses are located in New Zealand. In those text messages, Plaintiff emphatically claims "everything was consensual" and categorically denies that anything nonconsensual happened between her and Gaiman. Indeed, those text messages mention other New Zealand citizens/residents with whom Plaintiff discussed her consensual relationship with Gaiman.

Gaiman is entitled to a vigorous defense to these accusations in a forum where his access to compulsory discovery over key witnesses is guaranteed. Exercising jurisdiction in Wisconsin would greatly prejudice Gaiman's defense, burden this Court, and bypass the adequate and available remedies another sovereign nation has adopted through its legislative process based on the English common law that similarly supports claims in the United States.

In her response brief, Plaintiff misstates case law, misstates New Zealand law, and omits inconvenient findings by her own "legal expert."[1] Rather than

---

[1] Notably Plaintiff's local counsel in Wisconsin did not sign her response brief.  Their names are not even on the response papers.  Rather, her lawyers from New York City and Denver—who, like Plaintiff, have no connection to this forum, are the only lawyers listed on the brief. A party arguing that Wisconsin is the proper forum for this case ought to have Wisconsin counsel submitting those arguments.

acknowledge case law that is contrary to her position, she either omits it or grossly misinterprets it. Rather than concede that certain remedies are available in New Zealand, she and her counsel double down, repeatedly stating that New Zealand offers no remedy for her allegations. This reply brief points out those "misstatements" and gives this Court accurate information to rule on the issues presented.

## ARGUMENT

## I.    FORUM NON CONVENIENS

A *forum non conveniens* dismissal in favor of a New Zealand forum is the only appropriate outcome. Plaintiff's arguments fail to establish that New Zealand is anything less than available and adequate. Plaintiff's arguments concerning the public and private interest factors are not compelling and demonstrate that a U.S. forum would greatly prejudice Gaiman's ability to defend himself from Plaintiff's false and salacious accusations. Plaintiff's response brief makes clear that she chose the United States not because there is no remedy available in New Zealand, the obvious choice for a suit by a New Zealand citizen against a New Zealand permanent resident concerning alleged conduct that occurred entirely within New Zealand, but because she prefers the remedies offered in the United States. This is forum shopping—precisely what a *forum non conveniens* dismissal was designed to prevent.

### a.    New Zealand is an available and adequate forum

In her response brief, Plaintiff contends that New Zealand is not an adequate and available forum for allegations by a New Zealand citizen against a New Zealand resident for alleged sexual assaults that occurred entirely within New Zealand. There is a vast body of case law that addresses what constitutes an adequate and

available forum. Plaintiff's argument is: (1) New Zealand is not an available forum because Plaintiff no longer lives there; (2) New Zealand is not an adequate forum because New Zealand's Accident Compensation Act provides a remedy for compensatory damages outside of litigation; (3) New Zealand does not have the exact same cause of action and remedy as the United States; and (4) Plaintiff might be required to pay for Gaiman's defense costs if she brings a claim in New Zealand. Not only do these arguments fail, but in crafting them, Plaintiff and her counsel ignore case law and portions of their own purported expert's report that are inconvenient for them.

Plaintiff argues that New Zealand is not an available forum because neither the Plaintiff nor Gaiman currently reside in the country (ECF No. 36 at 12) and that "an alternative forum is available *if all parties* are amenable to process and are within the forum's jurisdiction." *Id.* (citing *In Re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1165 (5th Cir. 1987)). This is a misstatement of the cited case, which *actuall*y stands for the proposition that an available and adequate forum must exist as to all *defendants*. This is because amenability concerns are limited to the defendants ability to be served with a summons.[2] This is a non-issue in the present case, as both Gaiman and Palmer have agreed to subject themselves to the jurisdiction of New Zealand, as both have argued and agreed in their respective motions to dismiss

---

[2] In the cited case, the court does use a parenthetical to a secondary source that uses the term "parties" instead of "defendants," but even the secondary source cites only to a case dealing with the defendant's amenability. § 3828 Forum Non Conveniens—In General, 14D Fed. Prac. & Proc. Juris. § 3828 (4th ed.) (citing *DIRTT Envt'l Sols., Inc. v. Falkbuilt Ltd.*, 65 F.4th 547 (10th Cir.), *cert. denied*, 144 S. Ct. 197 (2023)).

for *forum non conveniens*.[3] *See Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 249 (4th Cir. 2011) (The availability requirement is usually satisfied if the defendant stipulates that it is amenable to service of process in the foreign jurisdiction.).

The case cited by Plaintiff for her argument that New Zealand is not available because neither party is currently in New Zealand does not support her assertion. In *In Re Air Crash Disaster Near New Orleans*, an order denying a motion to dismiss for *forum non conveniens* was reviewed under the abuse of discretion standard. The case involved multiple defendants, ***including the United States of America***, and the decision centered around the United States' lack of consent to submit to the jurisdiction of Uruguay. *In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1169 (5th Cir. 1987), *cert. granted, judgment vacated sub nom. Pan Am. World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989). The present case does not involve bringing an unwilling sovereign nation into a foreign forum. The Defendants here are two individuals who both consent to submit to the jurisdiction of New Zealand—an available forum.

Plaintiff next argues that an "unfavorable change in the law in the alternative forum" should be given substantial weight. ECF No. 36 p. 13 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, n.22 (1981)). Plaintiff's argument grossly misinterprets *Piper*. Contrary to the Plaintiff's representation, *Piper* stands for the proposition that an unfavorable change in law should ***not*** be given substantial or

---

[3] *See* Palmer's motion to dismiss on forum *non conveniens* grounds in the District of Massachusetts: Case 1:25-cv-10263-NMG, ECF No. 16.

controlling weight in determining whether to dismiss on grounds of *forum non conveniens* unless the remedy provided by the "alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 at 250 ("If conclusive or substantial weight were given to the possibility of a change in law, the *forum non conveniens* doctrine would become virtually useless.").

In *Piper*, plaintiffs brought suit in the United States over deaths resulting from a plane crash in Scotland. The Supreme Court overturned an appellate ruling that *forum non conveniens* "dismissal is automatically barred if it would lead to a change in the applicable law unfavorable to the plaintiff." *Id.* at 246 (The "Court of Appeals erred in holding that plaintiffs may defeat a motion to dismiss on grounds of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum."). *Id.* at 247.

The *Piper* Court explained that such an approach would lead to "substantial practical problems" because it would require district courts to engage in complex exercises in comparative law. *Id.* at 236 and 251.

> If the possibility of a change in law were given substantial weight, deciding motions to dismiss on the ground of *forum non conveniens* would become quite difficult. Choice-of-law analysis would become extremely important, and the **courts would frequently be required to interpret the law of foreign jurisdictions**. First, the trial court would have to determine what law would apply if the case were tried in the chosen forum, and what law would apply if the case were tried in the alternative forum. **It would then have to compare the rights, remedies, and procedures available under the law that would be applied in each forum.** Dismissal would be appropriate only if the court concluded that the law applied by the alternative forum is as favorable to the plaintiff as that of the chosen forum. **The doctrine of forum non conveniens, however, is designed in part to help courts avoid conducting complex exercises in comparative**

> *law.* As we stated in *Gilbert*, the public interest factors point towards dismissal where the court would be required to "untangle problems in conflict of laws, and in law foreign to itself."

*Piper*, 454 U.S. at 251 (emphasis added; citation omitted). The *Piper* Court's reasoning is especially prescient and applicable considering the **twenty-six-page** analysis of New Zealand law submitted by Plaintiff's so-called "expert." ECF No. 38-1. Just like the *Piper* Court, this Court should find that such an extensive undertaking in comparative law is unnecessary, inappropriate, and precisely the type of burden *forum non conveniens* aims to avoid.

In *Piper*, just as in the present case, foreign plaintiffs brought a claim in the United States for allegations of an incident occurring entirely on foreign soil (although in *Piper* there were some significant ties to the United States such as where the plane and propellers were manufactured). *Id.* at 238-39. Just like the present case, the *Piper* plaintiffs filed the case in the United States "because its laws regarding liability, capacity to sue, and damages are more favorable to [their] position than are those of Scotland." *Id.* at 240.

Plaintiff's use of *Piper* to argue that changes in law unfavorable to the Plaintiff should be given substantial weight is misplaced at best. Much like *Piper*, the unfavorable change in law argued by Plaintiff should be given **no** consideration because New Zealand offers an adequate alternative forum. Plaintiff wants this Court to take on the burden of a detailed analysis of the laws of a foreign forum, but this is the type of onerous undertaking a *forum non conveniens* doctrine seeks to avoid. Plaintiff should have properly cited to *Piper* and stated that unfavorable changes in

law should only receive substantial consideration if the alternative forum is **inadequate** so much so that it is no remedy at all. *Id.* at 254.

New Zealand's laws are adequate in the present case, even if we accept as true the twenty-six-page dissertation on New Zealand law filed with the response brief. Plaintiff's arguments that New Zealand is an inadequate forum boils down to the inability of the Plaintiff to recover the same level and type of damages available in the United States. This argument has been overwhelmingly rejected by federal courts since *Piper.* "An alternative forum is adequate where the parties will not be deprived of ***all*** remedies or treated unfairly." *Instituto Mexicano del Seguro Soc. v. Zimmer Biomet Holdings, Inc.*, 29 F.4th 351, 358 (7th Cir. 2022) (emphasis added) (internal quotations omitted). "Even where the relief is not as comprehensive or as favorable as a plaintiff might obtain in an American court, the alternative forum is still adequate." *Id.* (internal quotations omitted).

Plaintiff dubiously asserts that no ***civil remedy*** exists for the claims in New Zealand. Even if true, which it is not, this would not preclude a *forum non conveniens* dismissal.[4] "The *forum non conveniens* analysis does not look to the precise ***source*** of the plaintiff's remedy, so we will not require the alternative forum to offer a judicial remedy." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001) (emphasis added) (holding that New Zealand's Accident Compensation Act was an adequate remedy even though it was not judicial in nature). Plaintiff concedes that she would be eligible for relief through New Zealand's Accident Compensation Act if she

---

[4] Declaration of David PH Jones, KC, dated April 29, 2025 ("Jones Decl.") ¶¶ 9, 11.

returns to New Zealand. ECF No. 36 p. 16. Plaintiff's expert also conceded that remedies can be available through criminal restitution.[5] ECF No. 38-1 ¶ 2.31. Finally, Plaintiff's expert acknowledges that exemplary damages are available through civil litigation in New Zealand, an inconvenient fact that Plaintiff left out of her response brief.[6] ECF No. 38-1 ¶ 2.17.

Plaintiff argues that New Zealand is inadequate because New Zealand's Accident Compensation Act (2001) "provides cover for mental and physical injuries very similar to how the worker's compensation scheme works in the United States." ECF No. 36 p. 12. According to Plaintiff, this would bar her from bringing civil claims for compensatory damages (but not for exemplary or punitive damages). However, just like worker's compensation, it provides a remedy for injuries without the need to prove fault. New Zealand's Accident Compensation Act has been the subject of a number of federal cases, and courts have uniformly held that the Act provides an adequate remedy. *Lueck.*, 236 F.3d at 1144; *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:13-CV-19418, 2014 WL 637189, at *3 (S.D.W. Va. Feb. 18, 2014); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 887 F. Supp. 1469, 1475 (N.D. Ala. 1995); *Stonnell v. Int'l Harvester Co.*, 132 Ill. App. 3d 1043, 1044, 478 N.E.2d 518, 519 (1985).

Not only can Plaintiff obtain relief through the Accident Compensation Act, but also she can file suit in New Zealand for exemplary and/or punitive damages

---

[5] *See also* Jones Decl. ¶¶ 14-16.
[6] *See also* Jones Decl. ¶¶ 20-22.

as her own "legal expert" acknowledges.[7] ECF No. 38-1 ¶ 2.17 ("I note that the statutory bar does not preclude claims for exemplary or punitive damages arising out of conduct that has resulted in a personal injury."). For Plaintiff to glaze over this remedy specifically mentioned in her own "expert report" is misleading at best. She may not like the types of exemplary damages awards customary in New Zealand, but this does not make them an inadequate remedy for the purposes of a *forum non conveniens* dismissal.

Finally, Plaintiff argues that she may be subject to a security for anticipated costs as a condition of proceeding with the claim. ECF No. 36 at 15 (citing ECF No. 38-1 ¶ 2.37). First, such a fee would be at the discretion of the court, not an automatic requirement. *Id.* Second, courts have held that such a security, a feature of many judicial systems including many European nations, does not affect the adequacy of a forum. An "alternative forum is sufficient even if its procedures and causes of action differ from those in plaintiff's chosen forum, unless the remedies in the foreign forum are tantamount to no remedy at all. Features such as the . . . requirement that plaintiffs post security for litigation costs and that the losing party in a lawsuit pays the attorney's fees for the prevailing party do not meet that standard." *Glob. Art Exhibs., Inc. v. Kuhn & Bulow Italia Versicherungsmakler GmbH*, 607 F. Supp. 3d 421, 437 (S.D.N.Y. 2022) (internal quotations omitted).

In support of her argument that New Zealand is not an adequate forum, Plaintiff cites *Sector Nav. Co. v. M/V CAPTAIN P*, No. CIV A 06-1788, 2006 WL

---

[7] Jones Decl. ¶¶ 22-28.

2946356 (E.D. La. Oct. 13, 2006), an easily distinguishable Fifth Circuit case that is an outlier among post *Piper* cases. *Sector Nav.* dealt with an accident between two vessels in Nigerian waters. *Id.* at 1. The court distinguished cases where significantly lower available remedies were still adequate by noting that in those cases the "decedents and claimants" were all citizens of the alternative forum.[8] *Id.* at 4-6. In *Sector Nav.*, however, neither party was a Nigerian citizen and neither vessel was flagged in Nigeria. *Id.* at 1.

The present case differs from *Sector Nav.*, as it involves not only allegations of conduct in New Zealand, but also a New Zealand citizen as plaintiff and a New Zealand permanent resident as a defendant. As such, it is far more similar to *Gonzalez*, in which the Fifth Circuit reasoned that Mexico, as a sovereign nation, "decided to limit tort damages with respect to a child's death." *Gonzalez*, 301 F.3d at 382. Likewise, in *Vasquez*, the court acknowledged the vast disparities between recovery for wrongful death under Mexican law versus Texas law but held that the difference in available remedies was the not a sufficient reason to "undercut" Mexico's policies. *Vasquez*, 325 F.3d at 675 ("Were we to apply Texas law as a means of righting any perceived inequities of Mexican law, we would be undercutting Mexico's right to create a hospitable climate for investment.").

---

[8] The *Sector Nav.* court distinguished itself from *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 672, 681 n.4 (5th Cir. 2003) (holding that the limit on a wrongful death claim of approximately $5,700 was an adequate remedy) and from *Gonzalez v. Chrysler Corp.*, 301 F.3d 377, 380 (5th Cir. 2002) (holding that the $2,500 cap for loss of a child's life was still an adequate remedy).

### b.  Plaintiff overstates the deference that her choice of forum is entitled to

Plaintiff argues that her choice of forum is entitled to significant deference, despite that the alternative forum is her home forum. In support of her argument, she cites *Deb v. SIRVA, Inc.,* 832 F.3d 800 (7th Cir. 2016), which notes that a plaintiff's home forum is not dispositive to the issue of convenience. ECF No. 36 p. 17. Plaintiff goes on to argue that she should receive substantial deference because she no longer lives in New Zealand but has decided to attend university in Scotland. *Id*. But Plaintiff did not bring this suit in Scotland, where, presumably, it would be more convenient for her. Instead, she brought it in the United States.

*Deb* is easily distinguishable and it still supports Gaiman's assertion that any presumption in favor of Plaintiff's forum must apply with significantly less force. In *Deb*, a Canadian citizen brought a suit in Indiana against a Delaware corporation for actions that occurred in India. *Deb*, 832 F.3d at 803. Remanding the case for the district court to determine whether India was an adequate alternative forum, the court reasoned that while "litigation in Indiana would be far more convenient from a geographical perspective than one in India," the presumption in favor of the plaintiff's choice of forum was still applied with less force because Indiana was not the plaintiff's home forum. *Id.* at 806.

In the present case, Plaintiff argues that her choice of a forum in the United States is entitled to deference because it is more convenient for her. Unlike *Deb*, however, Plaintiff is not asking for a forum in an adjacent nation, but one 3,600 miles from where she currently lives and 8,400 miles from where she alleges the

incidents occurred and where she is a citizen. As such, Scotland (where Plaintiff is seeking to remain indefinitely) or New Zealand would be more convenient for her than the United States.

Plaintiff further attempts to explain that her choice of forum deserves deference because Gaiman "appears to actually reside here." Gaiman is a citizen of the United Kingdom.[9] He has permanent residency status in both the United States and New Zealand, where he owns and owned homes, respectively. As such, New Zealand or the United Kingdom present more reasonable forum choices than the United States.

### c. The private interest factors militate strongly against a U.S. forum

Gaiman has met the burden of showing that the balance of private interest factors favor *forum non conveniens* dismissal. In his initial brief, Gaiman lists twenty-two potential witnesses or classes of witnesses who would have knowledge of the allegations in Plaintiff's complaint. Gaiman identified the lack of a compulsory discovery process in New Zealand for foreign litigation which would prejudice his ability to defend Plaintiff's false and salacious accusations. Gaiman addressed the unreasonable inconvenience and expense of needing both New Zealand counsel and U.S. counsel. Gaiman addressed the difficulty a U.S. court would have overseeing the extensive discovery that would necessarily have to be conducted under New Zealand law.

Plaintiff first argues that New Zealand would be less convenient geographically for her and the Defendants. We disagree. Gaiman has the same ties to

---

[9] *See* Gaiman Dec. ¶ 2 ("I was born in England, and I am a citizen of the United Kingdom.").

New Zealand as he does to the United States—permanent residency. Plaintiff asserts that she does not intend to move back to New Zealand and that she is "currently working through the process to legally stay in the U.K. indefinitely." ECF No. 36 p. 21. This does not change the fact that she *is* a New Zealand citizen and has all the benefits of citizenship in that country.

Plaintiff listed the specific inconveniences she would face if she were to bring suit in New Zealand. She states that the cost of a trip from Scotland to Wisconsin would be $995 and one from Scotland to New Zealand would cost $1,494. *Id.* She discusses the inconvenience the time change would have on her communications with counsel because the time in Scotland is only 4-6 hours different than her counsel while New Zealand has a 13-hour time difference with Scotland. *Id.* While these minor differences should not be given much, if any, weight, that Plaintiff even raises them begs the question: Why not bring the suit in the U.K.? Gaiman is a U.K. citizen. Plaintiff, as we now know, intends to permanently reside in Scotland. To be clear, New Zealand is clearly the most appropriate forum for Plaintiff's claims, but if her convenience is of such paramount importance, it stands to reason that the U.K. would be more convenient for her.

Plaintiff also contends that Gaiman's co-defendant, his wife Palmer, intends to litigate her dispute in the District of Massachusetts. This is not true. In the action that Plaintiff filed against Palmer in Massachusetts, Palmer recently moved to dismiss, on *forum non conveniens* grounds, among others. Like Gaiman, Palmer

argues that New Zealand is the more appropriate forum.[10] The argument that Plaintiff would have to litigate in both New Zealand and Massachusetts is simply a fiction—both Defendants are willing to submit to the jurisdiction of New Zealand.

Gaiman identified numerous potential witnesses with knowledge of the allegations in the Complaint. Plaintiff's characterization of these witnesses as "ancillary" witnesses who cannot provide crucial evidence is wrong and extremely misleading. Not only does Plaintiff downplay the importance of having witnesses who can refute her allegations (especially important in a case where credibility is going to be at issue), but also she omits from her argument those witnesses she mentions by name in her text messages to Gaiman where she insists that Gaiman did not engage in nonconsensual sex with her.

Because the credibility of the parties will be of exceptional importance in such a case, in his initial motion papers, Gaiman identified numerous allegations in the Complaint that are false. He identified witnesses or potential witnesses who he would call to dispute these false allegations. He identified witnesses who could testify to inconsistencies in Plaintiff's story. He identified witnesses who would be instrumental in showing that Plaintiff is lying. These are not mere ancillary witnesses. They are key witnesses with relevant information. These witnesses are all either in New Zealand or Australia.

The lack of a compulsory process for obtaining deposition testimony from New Zealand-based witnesses should receive substantial weight in deciding whether to

---

[10] *See* Palmer's motion to dismiss on *forum non conveniens* grounds in the District of Massachusetts: Case 1:25-cv-10263-NMG, ECF No. 16.

dismiss under *forum non conveniens*.[11] Gaiman stated clearly and accurately in his initial brief that "the possibility of discovery is not guaranteed as it will only be granted at the discretion of New Zealand's High Court." ECF No. 19 p. 17. Plaintiff attempts to downplay this issue by stating that "the High Court of New Zealand takes requests for compulsory discovery for a foreign proceeding seriously and while those requests in foreign proceedings for compulsory discovery to the High Court are infrequent, they **have almost** always been granted." ECF No. 36 p. 23. To be clear, Plaintiff's legal expert identified only nine applications for compulsory discovery and stated that only one of them has been denied. ECF No. 38-1 ¶ 4.6. Even if this is accurate, it is still hardly a given that the New Zealanders could be compelled to testify here. A Defendant facing abhorrent and false accusations such as Gaiman deserves a guarantee that he can compel discovery, not merely good odds.

Plaintiff makes the very dubious assertion that "the location of witnesses and documents is essentially irrelevant to the *forum non conveniens* analysis absent some specific, articulable prejudice in a particular case that could make production from outside the forum unusually inconvenient." ECF No. 36 p. 25. The fact that New Zealand is not party to the Hague Convention and compulsory discovery such as depositions is solely at the discretion of New Zealand's High Court should be enough to carry this factor in favor of dismissal, and it is important to point out that the advent of video conferencing has not eliminated the benefits of in person testimony. *See Star*

---

[11] *See Piper*, 454 U.S. 235 at 242 (noting that the District Court correctly determined that a U.S. forum would be unfair to the defendants "because crucial witnesses and evidence were beyond the reach of compulsory process.")

*Colbert v. Dougan*, 724 F. Supp. 3d 304, 330–31 (S.D.N.Y. 2024), *appeal withdrawn sub nom. Colbert v. Dougan*, No. 24-1073, 2024 WL 4615736 (2d Cir. July 25, 2024) ("Though the inevitable costs [of producing witnesses] can be alleviated under U.S. law by the submission of letters rogatory and the availability of videotaped depositions, such a process has been recognized as time-consuming, and ***there is, of course, a preference for live testimony***.") (internal quotations omitted); *see also Urbanek v. Stryjewski,* No. 8:22-CV-2501-MSS-MRM, 2024 WL 810875, at *4 (M.D. Fla. Feb. 27, 2024) ("Of all the private interest factors, the relative ability for the forums to compel the attendance of significant unwilling witnesses at trial often is considered the most important factor, ***because the presentation of live testimony is essential to a fair trial***.") (emphasis added).

If this case remains in the Western District of Wisconsin, this Court, and a Wisconsin jury, will need to evaluate the testimony of the parties and numerous nonparty witnesses. The character and veracity of these witnesses will necessarily be weighed in evaluating this testimony. Defendant will be forced to disprove statements and accusations Plaintiff has made against him (to date, Plaintiff has not indicated any evidence outside of her testimony exists). To disprove Plaintiff's allegations, Defendant will need to call numerous witnesses, and a jury will need to evaluate their testimony. Despite the advent of video conferencing, it cannot replace the effectiveness and persuasiveness of in person testimony. And even if the witnesses can testify in person, Gaiman should not be forced to assume the costs of transporting them from New

Zealand to Wisconsin to provide live in-person testimony to demonstrate that the Plaintiff is lying.

### d.  The public interest factors militate strongly against a U.S. forum

Plaintiff's argument on the public interest factors does not specifically address the five public interest factors, and she appears to base her entire argument on the legislative history of the TVPA. For clarity's sake, the five public interest factors are: (1) the local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to a particular forum. *Bos. Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009). Plaintiff fails to address the local interests New Zealand has in resolving this case and instead resorts to attacks on New Zealand's legislated remedies.

Gaiman, in his initial brief, argued that New Zealand has a much stronger interest in resolving this case than does the United States. Because Plaintiff does not address New Zealand's interests in her response brief, Gaiman will stand by the argument in his initial brief outlining the interest New Zealand has in providing protection for its citizens within its own boarders and precedent for its legal system.

Plaintiff's argument that the legislative intent of the TVPA established a public interest toward litigation in the U.S. is not compelling. Undeniably, the intent of the TVPA was to deter human trafficking. But the point of it certainly was not to expand the jurisdiction of U.S. courts to encompass allegations of sexual assault by foreign citizens against foreign citizens for conduct that is alleged to have occurred

entirely on foreign soil. Further, the TVPA has more enforcement and deterrent mechanisms than just civil remedies.

Bringing this case in Wisconsin does not further the stated purpose of the TVPA. Instead, it would burden Wisconsin residents with jury duty even though the Western District of Wisconsin has no connection to the allegations. The *Piper* Court held that the burden of jury duty, in addition to the lower court's unfamiliarity with Scottish law were sufficient to satisfy the public interest factors because the chosen forum had "little connection with the controversy." *Piper*, 454 U.S. at 244. Likewise, the burden this case presents to both this Court and the citizens tasked with jury duty simply outweighs any benefit of maintaining this case in the Western District of Wisconsin.

The public interest factors in this case overwhelmingly support dismissal on *forum non conveniens* grounds. First, New Zealand has a strong local interest in this case as it involves allegations of criminal and tortious behavior by one of its own residents, against one of its own citizens, and occurring within its own borders. New Zealand has a robust system involving the Accident Compensation Act, which provides remedies for injuries without the need to establish liability, exemplary damages which can be obtained for the type of outrageous conduct Plaintiff alleges, and restitution from any criminal proceedings. Second, this case will involve an onerous undertaking in comparative law, as evident in the Plaintiff's twenty-six-page report on New Zealand law. *Cf.* Jones Decl. ¶¶ 9-34. Finally, the burden and expense of this case to U.S.

taxpayers and a Wisconsin jury exceed any benefits the U.S. has in retaining jurisdiction of this claim.

## II.    TVPA CLAIMS

Plaintiff paints the issue of whether the civil remedies provision of the TVPA applies extraterritorially as unambiguous. It is not. Gaiman concedes now, as he did in his initial brief, that some courts have held that the TVPA's civil remedies provision applies extra-territorially, and other courts have held that it does not. The only appellate court decision on the issue to date, *Roe v. Howard*, 917 F.3d 229 (4th Cir. 2019), held that civil remedies apply extra-territorially. Gaiman argues that this decision was incorrect because (1) the statute lacks the clear indication required to overcome the presumption against extraterritoriality, and (2) because it is incompatible with *RJR Nabisco*, where the Supreme Court held that RICO's civil remedy provision did not provide for extraterritorial jurisdiction for ***injuries*** that are not experienced domestically.[12] Plaintiff uses cases that involve conduct prior to the TVPA's 2008 amendment for the assertion that courts concluded the 2008 amendment permits extraterritorial application of the TVPA's civil remedies. This is misleading because these cases simply do not concern the effects of the 2008 amendment.

Plaintiff makes much of Congress's intent to combat "transnational human trafficking" when the TVPA was passed. ECF No. 36 p. 27. We do not dispute

---

[12] *See Adhikari v. KBR Inc*., No. 4:16-CV-2478, 2017 WL 4237923, at *5 (S.D. Tex. Sept. 25, 2017) ("*RJR Nabisco*'s general rule is clear: a civil remedy that lacks clear indications of extraterritorial reach will redress only injuries experienced domestically, no matter the substantive provisions' scope. Section 1595 lacks those clear indications.").

this was Congress's intent. Setting aside the important fact that *no transnational human trafficking was alleged in this case*, the question to be decided here is whether Congress clearly indicated that the civil remedies provision, § 1595, is to be applied extraterritorially. Section 1596, the extraterritorial provision, was, as Plaintiff noted, added after the civil remedies provision. Congress granted extraterritorial jurisdiction to specifically enumerated TVPA provisions in § 1596. The civil remedies provision is not among those enumerated provisions. Congress could have easily included the civil remedies provision in this list but chose not to. *See Doe I v. Apple Inc.*, No. 1:19-CV-03737 (CJN), 2021 WL 5774224, at *15 (D.D.C. Nov. 2, 2021), *aff'd sub nom. Doe 1 v. Apple Inc.*, 96 F.4th 403 (D.C. Cir. 2024) ("Congress could have easily included § 1595 in § 1596, but it did not.").

Plaintiff lists several cases that address whether the 2008 amendment to the TVPA was retroactive. These cases are unpersuasive, and Plaintiff's use of them is misleading because they do not address the issue of whether the current version of the TVPA's civil remedies provision has an extraterritorial effect. In *Ratha v. Rubicon Res., LLC*, 111 F.4th 946 (9th Cir. 2024), reh'g *en banc* granted, opinion vacated, 129 F.4th 1212 (9th Cir. 2025), the Ninth Circuit did not reach the issue of whether the civil remedies applied extraterritorially, limiting its holding to whether the TVPA's 2008 amendment applied retroactively. Finding that they did not, the court dismissed

the claim without deciding on whether the TVPA's civil remedies had extraterritorial reach after 2008.[13]

Plaintiff asserts that *Adhikari v. KBR Inc.*, 2017 WL 4237923 (S.D. Tex. Sept. 25, 2017) stands for the proposition that "the 2008 amendments allow for such claims only based on post-2008 conduct." ECF No. 36 p. 32. This is again misleading. The holding of the *Adhikari v. KBR Inc.* court was that the TVPA's civil remedy lacked clear indications of extraterritorial reach. It does not provide an analysis of the TVPA after the 2008 amendments. *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 682 (S.D. Tex. 2009) was likewise limited to a pre-2008 interpretation of the TVPA and does not stand for the assertion made by Plaintiff that "the 2008 amendments created civil liability for extraterritorial conduct only on a going-forward basis." ECF No. 36 p. 32. All of the out-of-circuit and pre-2008 cases cited by Plaintiff stand only for the fact that the civil remedies provision of the TVPA did not apply extraterritorially pre-2008 amendment.[14] The effects of that amendment cannot be inferred from those cases as it was not the issue these courts faced.

In his initial brief, Gaiman argued that the Fourth Circuit's *Howard* decision is incorrect because it is incompatible with *RJR Nabisco*, where the Supreme Court treated the civil remedies provision of the RICO act, § 1964(c), differently than

---

[13] The *Ratha* court was very clear that the issue was not decided: "Assuming without deciding that § 1595's civil remedy provision could be applied extraterritorially so long as the requirements of § 1596 were met." *Ratha*, 111 F.4th at 954.

[14] Plaintiff cites the following pre-2008 cases, ECF No. 36 at 32: *Ratha v. Rubicon Res., LLC,* 111 F.4th 946, 953 (9th Cir. 2024); *Adhikari v. KBR Inc. (Adikhari II)*, No. 4:16-CV-2478, 2017 WL 4237923, at *5 (S.D. Tex. Sept. 25, 2017); *Adhikari v. Daoud & Partners (Adikhari I)*, 994 F. Supp. 2d 831, 840 (S.D. Tex. 2014).

the substantive provisions, § 1962. ECF No. 19 (citing *RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325 (2016)). The *RJR Nabisco* court held that "providing a private civil remedy for foreign conduct creates a potential for international friction beyond that presented by merely applying U.S. substantive law to that foreign conduct." *RJR Nabisco*, 579 U.S. 325 at 346-47. The Court goes on to state that RICO's civil remedies provision did not contain a clear indication from Congress that it should be applied extraterritorially because the statute does not specify that it covers ***injuries suffered outside the United States***. *Id*. at 345.

Plaintiff argues that *RJR Nabisco* does not apply to this case because RICO's civil remedies provision required a Plaintiff to have been "injured in his business or property by a reason of a violation of section 1962" while the TVPA refers more broadly to "an individual who is a victim of a violation of this chapter." 18 U.S.C. § 1964(c); 18 U.S.C. § 1595. The restrictive language in RICO does not affect the broader *RJR Nabisco* ruling because ***both statutes require an injury***. The TVPA's civil remedies provision refers to damages, which is a remedy that requires an injury. As such, *RJR Nabisco* is applicable and for the civil remedies portion of the TVPA to have extraterritorial effect, the statute must provide a clear indication that Congress intended to create a private right of action for ***injuries*** suffered outside the United States. Section 1595 of the TVPA does ***not*** "give a clear, affirmative indication that it applies extraterritorially" and, therefore, cannot rebut the presumption against extraterritoriality. *See RJR Nabisco*, 579 U.S. at 337.

-23-

## III.    PRUDENTIAL EXHAUSTION IS NOT LIMITED TO INTERNATIONAL LAW

The Prudential Exhaustion doctrine, also known as the "local remedies rule," is based on the principles of international comity, not on international law. Gaiman acknowledged in his initial brief that there is a circuit split over the application of the doctrine, but it has been adopted within the Seventh Circuit. *See Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 695 (7th Cir. 2012), *aff'd sub nom. Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847 (7th Cir. 2015). Admittedly, the Seventh Circuit cases dealt with an international law issue, but these cases did not limit the application of the rule to international law. *See id.*

While the rule has only been applied in the international law context in the Seventh Circuit, it has been applied domestically in the Ninth Circuit, as previously argued. ECF No. 19 at 34-5 (citing *Sarei v. Rio Tinto, PLC*, 550 F.3d 822 (9th Cir. 2008) (plurality)). In *Sarei*, the court applied the prudential exhaustion requirement to the Alien Tort Statute ("ATS"), a domestic law. The plurality opinion specifically addressed the applicability of prudential exhaustion outside of international tribunals and found that comity reasons favored prudential exhaustion more heavily in domestic courts:

> Though it is self-evident, it is worth remembering that in ATS adjudication, the United States courts are *not* international tribunals. With this in mind, the appropriateness of applying prudential exhaustion to some ATS cases only gains force; if exhaustion is considered essential to the smooth operation of international tribunals whose jurisdiction is established only through explicit consent from other sovereigns, then it is all the more significant in the absence of such explicit consent to jurisdiction.

*Sarei*, 550 F.3d at 830.

While the prudential exhaustion doctrine is an area of the law with little precedent, Plaintiff's counter argument is logically flawed. First, *Abelesz* established that the Seventh Circuit has adopted this rule for transnational litigation. Just because it has only been applied in cases addressing international law does not mean that it cannot be applied to domestic laws, as it was in *Sarei*. Prudential exhaustion is based on the principles of international comity and provides a mechanism through which a domestic court can ensure matters with a weak nexus to the United States are first addressed by the nation with the greatest interest. This Court may consider, as the *Sarei* court did, that the home forum provides an adequate and available remedy and Plaintiff must first exhaust her claims in New Zealand before bringing them to the U.S.

## IV.    INTERNATIONAL COMITY FAVORS A NEW ZEALAND FORUM

All of the previous arguments (*forum non conveniens*, extraterritorial jurisdiction, and prudential exhaustion) are based on the principles of international comity—"deference to foreign government actors that is not required by international law but is incorporated in domestic law." *International Comity in American Law*, 115 Colum. L. Rev. at 2078. International comity allows courts to avoid "interference with the authority of another sovereign." *Am. Banana Co. v. United Fruit Co.*, 213 U.S. 347, 356 (1909).

In *Vasquez*, the court determined that the extremely low damages available in Mexico for a child's death were based on Mexico's balancing of interests—namely the protection of its citizenry with creating a hospitable investment climate.

*Vasquez*, 325 F.3d at 675. The court declined to apply Texas law because it would be undercutting Mexico's right to make its own policy choices. *Id.* Likewise, in *Gonzalez*, the court held that "it would be inappropriate—even patronizing—for us to denounce this legitimate policy choice by holding that Mexico provides an inadequate forum for Mexican tort victims." *Gonzalez*, 301 F.3d at 382.

In the present case, New Zealand has a well-established procedure for ensuring all its citizens receive compensatory damages—the Accident Compensation Act.[15] New Zealand has, through its legislature, made the choice to provide compensatory damages for torts available without the need to prove liability.[16] New Zealand further legislated that exemplary damages are available if the conduct is sufficiently outrageous.[17] New Zealand, a sovereign nation, created these policies by balancing its own interests and obligations to its citizens. The principles of international comity militate toward not undercutting the policy decisions of another sovereign.

## CONCLUSION

Defendant Neil Gaiman respectfully demands that the Court dismiss the Complaint against him on the merits with prejudice, award him attorney's fees and expenses incurred in defending this action and grant him such other and further relief as the Court deems just and proper.

---

[15] Jones Decl. ¶ 18-21.
[16] *Id.*
[17] *Id.* ¶¶ 22-28.

Dated: April 30, 2025.                    Respectfully submitted,


                                          *s/Stephen E. Kravit*
                                          Stephen E. Kravit
                                          State Bar No. 1016306
                                          Brian T. Fahl
                                          State Bar No. 1043244
                                          Wesley E. Haslam
                                          State Bar No. 1121993
                                          Kravit, Hovel & Krawczyk s.c.
                                          825 North Jefferson Street, Suite 500
                                          Milwaukee, Wisconsin 53202
                                          (414) 271-7100 (phone)
                                          (414) 271-8135 (facsimile)
                                          kravit@kravitlaw.com
                                          btf@kravitlaw.com
                                          weh@kravitlaw.com

                                          -and-

                                          BERK BRETTLER LLP


                                          *s/Andrew B. Brettler*
                                          Andrew B. Brettler
                                          Pro hac vice
                                          Jake A. Camara
                                          Pro hac vice
                                          Berk Brettler LLP
                                          9119 West Sunset Boulevard
                                          West Hollywood, California 90069
                                          (310) 278-2111
                                          abrettler@berkbrettler.com
                                          jcamara@berkbrettler.com

                                          *Attorneys for Defendant Neil Gaiman*


                                    -27-